**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **SE PROPERTY HOLDINGS, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION 12-0719-WS-B** |
| ) | |
| **RICHARD E. WELSH and PAMELA K.** ) | |
| **GILLIAM f/ka Pamela K. Welsh,** ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This matter comes before the Court on plaintiff's Motions for Default Judgment (docs. 14, 19) directed at both defendants, Richard E. Welsh and Pamela K. Gilliam.  The Motions are ripe for disposition.

**I.    Background.**

This case is one of numerous loan default actions that have landed on this District Court's docket in recent years.  In a commonplace scenario in this sort of litigation, the defendants have been properly served with process, but have not met their obligations under the Federal Rules of Civil Procedure.  Specifically, they have failed to respond, answer or in any way defend against the well-pleaded claims against them.  Default having been entered, defendants having received ample notice of the pendency of such default proceedings and having steadfastly opted to remain silent, all that now remains to be done is for the Court to verify that entry of judgment is appropriate and, if so, fix damages and enter default judgment.

Plaintiff, SE Property Holdings, LLC ("SEPH") commenced this action by filing a Complaint (doc. 1) against defendants, Richard E. Welsh and Pamela K. Gilliam, in this District Court on November 20, 2012.  The Complaint alleged three state-law causes of action for breach of contract, with each claim arising from a separate unpaid loan.[1]  The well-pleaded factual

---

[1]    Notwithstanding the purely state-law nature of these claims, SEPH properly predicated federal subject-matter jurisdiction on the diversity provisions of 28 U.S.C. § 1332.  In (Continued)

allegations of the Complaint describe the circumstances and terms of each of those loans in substantial detail.

The first loan, Loan No. 79081, dates back to January 2005, but was extended, renewed and/or modified in January 2010. (Doc. 1, ¶¶ 9-10.) According to the Complaint, the borrower, defendant Richard Welsh, defaulted on such loan in or around May 2012 by failing to make contractually required payments, after which SEPH purchased the loan from the financial institution that had held it previously, such that SEPH is presently entitled to all indebtedness for Loan No. 79081. (*Id.*, ¶¶ 11-13.)

The second loan, Loan No. 93742, was made in May 2006, but was extended, renewed and/or modified in May 2009. (*Id.*, ¶¶ 19-20.) The Complaint alleges that Welsh defaulted on that loan in or around May 2012 by failing to make contractually required payments, after which SEPH purchased the loan from the financial institution that had held it previously, such that SEPH is presently entitled to all indebtedness for Loan No. 93742. (*Id.*, ¶¶ 21-23.)

The third loan, Loan No. 30791, was entered into by Welsh and Gilliam in July 2003, and was subsequently extended, renewed and/or modified on multiple occasions. (*Id.*, ¶¶ 29-31.) Well-pleaded facts in the Complaint show that Welsh and Gilliam defaulted on that loan in or around August 2012 by failing to make contractually required payments, and that SEPH presently owns Loan No. 30791 and is entitled to all indebtedness for same. (*Id.*, ¶¶ 32-33.)

The record shows that SEPH timely and properly served process on Welsh and Gilliam in this case. In particular, a private process server personally served a copy of the Summons and Complaint on Gilliam at an address in Gulf Shores, Alabama on December 6, 2012. (Doc. 10.) Likewise, the same process server personally served a copy of the Summons and Complaint on Welsh at an address in Daphne, Alabama on January 3, 2013. (Doc. 13.) Despite this clear proof of service in compliance with Rule 4(e)(2)(A), Fed.R.Civ.P., Welsh and Gilliam have neither appeared nor taken any action to defend against SEPH's claims. On that basis, Clerk's

---

particular, the Complaint reflects that the amount in controversy (*i.e.*, the sum claimed to be due and owing on the three subject loans) is well above the $75,000 jurisdictional threshold and that complete diversity of citizenship exists among the parties (inasmuch as SEPH is a limited liability company whose sole member is an Ohio corporation with its principal place of business in Ohio, whereas defendants are both citizens of Alabama for diversity purposes). On this showing, the Court is satisfied that federal jurisdiction has properly been invoked.

Entries of Default (docs. 17, 20) were entered against Gilliam and Welsh pursuant to Rule 55(a), Fed.R.Civ.P., on January 10, 2013 and January 28, 2013, respectively.[2] SEPH has filed Motions for Default Judgment, supported by affidavits and exhibits to prove up the damages sought. Despite being afforded at least three weeks to respond to those Motions for Default Judgment, to request that the default be set aside under Rule 55(c), to contest damages or otherwise to be heard or participate in these proceedings, Gilliam and Welsh have not appeared.

## II.  Analysis.

### A.  Entry of Default Judgment is Appropriate.

In this Circuit, "there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor." *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003); *see also Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982) ("Since this case involves a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment."). Nonetheless, it is well established that a "district court has the authority to enter default judgment for failure … to comply with its orders or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

Where, as here, defendants have failed to appear or otherwise acknowledge the pendency of a lawsuit for more than ten weeks (in Gilliam's case) or six weeks (in Welsh's case) after being served, entry of default judgment is appropriate. Indeed, Rule 55 itself provides for entry of default and default judgment where a defendant "has failed to plead or otherwise defend." Rule 55(a), Fed.R.Civ.P. In a variety of contexts, courts have entered default judgments against defendants who have failed to appear and defend in a timely manner following proper service of

---

[2]    The court file confirms that Gilliam and Welsh have been afforded abundant notice of these default proceedings. Indeed, the Clerk's Office mailed copies of the Clerk's Entry of Default to each defendant at his or her respective service address. Moreover, Certificates of Service confirm that SEPH served copies of both its Applications for Entry of Default and its Motions for Default Judgment on Welsh and Gilliam at various addresses in Gulf Shores, Alabama. (*See* docs. 14, 16, 18, 19.) Despite such notice of these default proceedings, Gilliam and Welsh have chosen to refrain from taking any action to defend their respective interests in this case. Accordingly, the Court concludes that no further notice or invitation to defendants is warranted prior to entry of default judgment.

process.[3]  In short, "[w]hile modern courts do not favor default judgments, they are certainly appropriate when the adversary process has been halted because of an essentially unresponsive party." *Flynn v. Angelucci Bros. & Sons, Inc.*, 448 F. Supp.2d 193, 195 (D.D.C. 2006) (citation omitted).  That is precisely what Gilliam and Welsh have done here.  Despite being served with process some time ago, defendants have declined to appear or defend, and have effectively prevented this litigation from leaving the starting blocks.

The law is clear, however, that Gilliam's and Welsh's failure to appear and the Clerk's Entries of Default do not automatically entitle SEPH to a default judgment in the requested (or any) amount.  Indeed, a default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but is instead merely "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability."  *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp.2d 1353, 1357 (S.D. Ga. 2004); *see also Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1204 (5th Cir. 1975) (similar); *Cotton States Mut. Ins. Co. v. Sellars*, 2008 WL 4601015, *5 (M.D. Ala. Oct. 15, 2008) ("the failure to defend does not automatically entitle a plaintiff to recover"); *Descent v. Kolitsidas*, 396 F. Supp.2d 1315, 1316 (M.D. Fla. 2005) ("the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief").  Stated differently, "a default judgment cannot stand on a complaint that fails to state a claim."  *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997); *see also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009)

---

[3]       *See, e.g., In re Knight*, 833 F.2d 1515, 1516 (11th Cir. 1987) ("Where a party offers no good reason for the late filing of its answer, entry of default judgment against that party is appropriate."); *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992) ("when the court finds an intentional failure of responsive pleadings there need be no other finding" to justify default judgment); *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp.2d 1287, 1290 (S.D. Ala. 2010) ("Where, as here, a defendant has failed to appear or otherwise acknowledge the pendency of a lawsuit for more than three months after being served, entry of default judgment is appropriate."); *Kidd v. Andrews*, 340 F. Supp.2d 333, 338 (W.D.N.Y. 2004) (entering default judgment against defendant who failed to answer or move against complaint for nearly three months); *Viveros v. Nationwide Janitorial Ass'n, Inc.*, 200 F.R.D. 681, 684 (N.D. Ga. 2000) (entering default judgment against counterclaim defendant who had failed to answer or otherwise respond within time provided by Rule 12(a)(2)).

("A default defendant may, on appeal, challenge the sufficiency of the complaint, even if he may not challenge the sufficiency of the proof.").

In light of these principles, the Court has reviewed the Complaint, and is satisfied that it sets forth viable causes of action against Gilliam and Welsh under Alabama law.  In particular, Count One of the Complaint alleges that Welsh executed certain notes and security agreements on Loan No. 79081, pursuant to which he agreed to make certain payments in consideration for money that was loaned to him, that Welsh breached the terms governing that loan by failing to make required payments to SEPH, and that SEPH has been damaged by such non-performance. Similarly, Count Two of the Complaint alleges that Welsh executed certain notes and security agreements on Loan No. 93742, pursuant to which he agreed to make certain payments in consideration for money that was loaned to him, that Welsh breached the terms governing that loan by failing to make required payments to SEPH, and that SEPH has been damaged by such non-performance.  Finally, Count Three of the Complaint alleges that Gilliam and Welsh executed certain notes and security agreements on Loan No. 30791, pursuant to which they agreed to make certain payments in exchange for money that was loaned to them, that defendants breached the terms governing that loan by failing to make required payments to SEPH, and that SEPH has been damaged by such non-performance.

These and other factual allegations in the Complaint are adequate to state viable causes of action under Alabama law for breach of contract.[4]  Because the well-pleaded factual allegations in the Complaint are deemed admitted by virtue of Welsh's and Gilliam's defaults, and because they are sufficient to state breach-of-contract claims under Alabama law, the Court finds that Welsh is liable to SEPH on each of Counts One, Two, and Three, and that Gilliam is liable to SEPH on Count Three.  Simply put, then, entry of default judgment against Welsh and Gilliam is appropriate pursuant to Rule 55, given their failure to appear after service of process and the sufficiency of the well-pleaded factual allegations of the Complaint (all of which Welsh and

---

[4]        *See generally National Sec. Fire & Cas. Co. v. DeWitt*, 85 So.3d 355, 371 (Ala. 2011) ("In order to establish a breach-of-contract claim, a plaintiff must show (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages.") (citations omitted); *Barrett v. Radjabi-Mougadam*, 39 So.3d 95, 98 (Ala. 2009) (similar).  "A promissory note is a form of contract; therefore, it must be construed under general contract principles."  *Bockman v. WCH, LLC*, 943 So.2d 789, 795 (Ala. 2006).

Gilliam have now admitted) to establish their liability to SEPH for breach of contract as specified in Counts One, Two and Three of the Complaint.

> **B.     Applicable Legal Standard for Damages.**

Notwithstanding the propriety of default judgment against Welsh and Gilliam, it remains incumbent on SEPH to prove its damages.  "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records America, Inc. v. Lacey*, 510 F. Supp.2d 588, 593 n.5 (S.D. Ala. 2007); *see also Eastern Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 652 F. Supp.2d 599, 605 (E.D. Pa. 2009) ("A party's default does not suggest that the party has admitted the amount of damages that the moving party seeks").  Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (affirming lower court's decision not to award damages on default judgment, where requested damages were "speculative and not proven by a fair preponderance of the evidence"); *Natures Way Marine, LLC v. North America Materials, Inc.*, 2008 WL 1776946, *1 (S.D. Ala. Apr. 16, 2008) (in default judgment setting, district court has obligation "not to award damages that are uncertain or speculative").[5]  "Rather than merely *telling* the Court in summary fashion what its damages are,

---

[5]          In that regard, the Eleventh Circuit has explained that "[f]ederal law similarly requires a judicial determination of damages absent a factual basis in the record," even where the defendant is in default.  *Anheuser Busch*, 317 F.3d at 1266.  Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a sum certain, the law "requires the district court to hold an evidentiary hearing" to fix the amount of damages.  *S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005).  However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly unnecessary to a fully informed determination of damages."  *Id.* at 1232 n.13; *see also Flynn v. Extreme Granite, Inc.*, 671 F. Supp.2d 157, 160 (D.D.C. 2009) (district court is not required to hold hearing to fix damages in default judgment context as long as it ensures there is a basis for damages specified); *Eastern Elec. Corp.*, 652 F. Supp.2d at 605 ("In considering the amount of damages ..., the Court may make its determination by conducting a hearing or by receiving detailed affidavits from the claimant."); *Virgin Records*, 510 F. Supp.2d at 593-94 ("Where the (Continued)

a plaintiff seeking default judgment must *show* the Court what those damages are, how they are calculated, and where they come from." *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp.2d 1287, 1294 (S.D. Ala. 2010).

  **C. *Unpaid Principal and Interest on Loans.***

  To prove its damages, plaintiff has submitted the Affidavits of Karen Harmon and Deborah D. Ard, both of whom are Assistant Secretaries for SEPH. With respect to Loan No. 79081, defendant's evidence confirms that on January 4, 2004, Welsh borrowed $92,000 from SEPH's predecessor, and that in a subsequent renewal of the note, he agreed to terms including an 18% interest rate on the balance of the note not paid at maturity, including acceleration. (Doc. 1, Exhs. A-B.) Defendant's records reflect an outstanding balance on Loan No. 79081 of **$83,039.58**, inclusive of $72,558.34 in unpaid principal plus $10,481.24 in accrued interest through and including today's date. (Ard Aff. (doc. 19, Exh. A), ¶ 7.)

  With respect to Loan No. 93742, defendant's evidence shows that on May 11, 2006, Welsh borrowed $55,000 from SEPH's predecessor, and agreed in a subsequent renewal of the note to terms including an 18% interest rate on the balance of the note not paid at maturity, including acceleration. (Doc. 1, Exhs. D-E; Ard Aff., ¶¶ 8-9.) According to defendant's evidence, the outstanding balance on Loan No. 93742 is **$42,729.97**, inclusive of $36,991.49 in unpaid principal plus $5,738.48 in accrued interest through and including today's date. (Ard Aff., ¶ 12.)

  Finally, with respect to Loan No. 30791, the record confirms that on July 31, 2003, Welsh and Gilliam borrowed $41,710 from SEPH's predecessor, and agreed in a subsequent renewal of the note to terms including an 18% interest rate on the balance of the note not paid at

---

amount of damages sought is a sum certain, or where an adequate record has been made via affidavits and documentary evidence to show ... damages, no evidentiary hearing is required."); *Natures Way Marine, LLC v. North American Materials, Inc.*, 2008 WL 801702, *3 (S.D. Ala. Mar. 24, 2008) ("Although the trial court must make determinations as to the amount and character of damages, it is not necessary to conduct an evidentiary hearing to fix damages if the amounts sought by plaintiff are adequately supported by supporting affidavits and other documentation."). In this case, SEPH has not requested a damages hearing, but has instead submitted evidence in support of the specified damages amounts. In light of these authorities and circumstances, the damages determination will stand or fall on the written evidentiary submissions, without the necessity of a formal hearing.

maturity, including acceleration.  (Doc. 1, Exhs. G, H, & I; Ard Aff., ¶¶ 13-16.)  Defendant's evidence shows that the outstanding balance on Loan No. 30791 is **$25,854.16**, inclusive of $23,793.97 in unpaid principal plus $2,060.19 in accrued interest through and including today's date.  (Ard Aff., ¶ 18.)[6]

Plaintiff having demonstrated that the bold-type amounts set forth above are elements of damages that it is entitled to recover against Welsh in this matter, the default judgment to be entered against Welsh and in favor of SEPH will reflect principal and interest damages on the three breach-of-contract claims totaling **$151,623.71**.  Of that amount, **$25,854.16** will be included in a default judgment against Gilliam as damages for which she and Welsh are jointly and severally liable.

### D.    Plaintiff's Claim for Attorney's Fees and Costs.

In addition to unpaid principal and default interest, SEPH seeks an award of attorney's fees and costs incurred in enforcing defendants' payment obligations.  "Alabama follows the American rule, whereby attorney fees may be recovered if they are provided for by statute or by contract …."  *Jones v. Regions Bank*, 25 So.3d 427, 441 (Ala. 2009) (citations omitted); *see also Battle v. City of Birmingham*, 656 So.2d 344, 347 (Ala. 1995) (same).[7]  The law is clear that "provisions regarding reasonable attorney's fees are terms of the contracts susceptible to breach."  *Army Aviation Center Federal Credit Union v. Poston*, 460 So.2d 139, 141 (Ala. 1984); *see also Ierna v. Arthur Murray Int'l, Inc.*, 833 F.2d 1472, 1476 (11th Cir. 1987) ("When the parties contractually provide for attorneys' fees, the award is an integral part of the merits of

---

[6]    Plaintiff's motions for default judgment include conflicting affidavits as to the present balance of Loan No. 30791.  SEPH official Harmon avers that the balance of the loan as of January 3, 2013 was $31,512.81, while SEPH official Ard avers (in an otherwise verbatim sentence) that the balance as of January 25, 2013 was $25,560.91.  (*Compare* Harmon Aff. (doc. 14, Exh. A), ¶ 9 *with* Ard Aff., ¶ 18.)  The Court finds the lower figure to be consistent with the evidence and defendant's own representations elsewhere in the court file; therefore, the higher number is discarded as facially inaccurate.

[7]    The Eleventh Circuit has hewed to the same principle.  *See, e.g., Dionne v. Floormasters Enterprises, Inc.*, 667 F.3d 1199, 1205 (11th Cir. 2012) ("under the 'American Rule' parties in litigation are expected to bear their own attorney's fees and costs"); *In re Martinez*, 416 F.3d 1286, 1288 (11th Cir. 2005) ("Generally, in federal litigation, … a prevailing litigant may not collect an attorney's fee from his opponent unless authorized by either a federal statute or an enforceable contract between the parties.").

the case.").  Here, all relevant agreements and notes included provisions entitling SEPH to recover its reasonable attorney's fees and other collection costs should Welsh and Gilliam default on their repayment obligations.  Typical of these "collection costs" provisions is that found in the "Multipurpose Note and Security Agreement" on Loan No. 79081 and dated January 3, 2010, wherein Welsh agreed as follows: "If I am in default and you have to sue or take other steps to collect or secure this note, I agree to pay your reasonable costs.  If the original note amount financed is greater than $300 and if you refer this note to an attorney who is not your salaried employee, I agree that these costs include a reasonable attorney's fee."  (Doc. 1, Exh B, at 2.)  Pertinent contract documents for all three loans contain comparable fee-shifting provisions.  By the plain contract terms, then, SEPH is entitled to recover from defendants its reasonable fees and costs incurred in collecting on Loan Nos. 79081, 93742, and 30791 because Welsh and Gilliam defaulted, forcing SEPH to sue and take other steps (including foreclosure proceedings) to collect or secure the notes.[8]

It is well-settled that "[t]he determination of whether an attorney fee is reasonable is within the sound discretion of the trial court."  *Kiker v. Probate Court of Mobile County*, 67 So.3d 865, 867 (Ala. 2010) (citations omitted).  To guide this reasonableness inquiry, Alabama courts recognize a non-exhaustive list of criteria that may properly be considered, including: "(1) [T]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances."  *Pharmacia Corp. v. McGowan*, 915 So.2d 549, 552-53 (Ala. 2004) (citation omitted).

---

[8]     The "reasonableness" limitation on any award of fees and costs stems from two independent sources.  First, the agreements themselves specify that only reasonable attorney's fees and costs can be recovered.  Second, Alabama law imposes a reasonableness constraint on all fee-shifting contracts, as a matter of public policy.  *See, e.g., Willow Lake Residential Ass'n, Inc. v. Juliano*, 80 So.3d 226, 241 (Ala.Civ.App. 2010) ("Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation.").

As a general proposition, "[t]he starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.... The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (internal citations and quotation marks omitted). "The court may then adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit." *Association of Disabled Americans v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006).

Plaintiff claims an award of attorney's fees of $13,859.00. The Court has reviewed SEPH's evidentiary submission on attorney's fees for reasonableness, and finds with three exceptions that the requested fees are reasonable. Those exceptions, and the modifications to the fee award necessitated by each, will be discussed in turn.

First, with respect to reasonable hourly rates, the Court finds that SEPH has failed to meet its burden of supporting the reasonableness in the local legal market of the claimed $190 hourly rate for Attorney J. Breanne S. Zarzour, whom plaintiff's filings characterize as "an associate with less than one (1) year of professional experience." (Graham Aff. (doc. 19, Exh. B), ¶ 4.)[9] Attorney Zarzour's time will be compensated at an hourly rate of $150 instead, which the Court finds reasonable after due consideration of "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Authority*, 836 F.2d 1292, 1299 (11th Cir. 1988).

Second, with regard to paralegal hourly rates, considerable precedent confirms that the $120 sought by plaintiff is well in excess of the applicable prevailing rate. *See, e.g., SE Property Holdings, LLC v. Stradley*, 2012 WL 2130806, *4 (S.D. Ala. June 11, 2012) (where prevailing plaintiff in commercial dispute sought award for paralegal time at $110 per hour, observing that "[r]ecent opinions from this District Court reflect that the going rate for paralegals in the Mobile market is substantially lower"); *Branch Banking and Trust Co. v. Imagine CBQ, LLC*, 2012 WL 1987830, *3 (S.D. Ala. June 4, 2012) ("this district has customarily awarded $75.00 per hour …

---

[9]     This claimed rate is puzzling, given that it is identical to the rate plaintiff would charge for Attorney Robert C. Matthews, an attorney with more than five times her experience who has received special recognition for his skill and expertise in the profession. (*Id.*)

for paralegals in this district performing work traditionally performed by an attorney"); *Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC*, 2011 WL 1883009, *6 (S.D. Ala. May 17, 2011) ("Judges in this district have repeatedly approved paralegal rates of $75 an hour.") (citation omitted).  Plaintiff has not made a sufficient showing to support a higher rate by establishing, for example, that the paralegal involved in this action possesses unusually advanced qualifications or expertise.  Therefore, the Court will utilize a reasonable rate of $75.00 per hour for allowable paralegal time herein.

Third, with regard to reasonable hours, the law is clear that "[i]f fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary.  Courts are not authorized to be generous with the money of others."  *American Civil Liberties Union of Georgia v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (internal quotation marks omitted).  Under that standard, modest deductions from plaintiff's claimed hours are warranted for the following categories of time entries: (i) billings in tenth-hour fractional increments for tasks that reasonably require negligible time (*i.e.*, "receipt and review of notice of appearance," "receipt and review of corporate disclosure statement," etc.); (ii) billings for clerical tasks at a paralegal or lawyer rate (*i.e.*, "electronically file notice of appearance," "uploaded summons to federal court system"); (iii) potentially excessive billings for intraoffice conferences; and (iv) billings for monthly status reports.  The offending entries amount to relatively little time in the aggregate; therefore, the Court exercises its discretion to reduce plaintiff's requested hours by 10% across the board.  *See Bivins*, 548 F.3d at 1350 (where records show unreasonable hours billed, a court "has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut").

After making these appropriate modifications to rates and hours, the Court finds that the proper lodestar amount to be awarded to plaintiff under the attorney's fee provision of the relevant loan documents is **$11,205.00**.  The requested costs and expenses of **$719.78** are adequately documented and are approved as reasonable.  Adding attorney's fees and costs to the loan balances previously found to be due and owing, the proper amount of the default judgment to be entered against defendant Welsh is **$163,548.49**.  Default judgment will be entered against

Gilliam in the amount of the unpaid balance on Loan No. 30791, which is **$25,854.16**, with such judgment to run joint and several to that against Welsh.[10]

### III.   Conclusion.

For all of the foregoing reasons, it is hereby **ordered** as follows:

1.   Plaintiff's Motion for Default Judgment (doc. 14) is **granted in part, and denied in part**.  A default judgment will be entered in favor of plaintiff, SE Property Holdings, LLC, and against defendant Pamela K. Gilliam in the total amount of **$25,854.16**;

2.   Plaintiff's Motion for Default Judgment (doc. 19) is **granted in part, and denied in part**.  A default judgment will be entered in favor of plaintiff, SE Property Holdings, LLC, and against defendant Richard E. Welsh in the total amount of **$163,548.49**; and

3.   The default judgments against Gilliam and Welsh are joint and several because they relate to the same underlying debt and default; therefore, any recovery from one defendant will reduce the outstanding judgment as to the other until such time as the judgment against Gilliam has been satisfied in full.

DONE and ORDERED this 19th day of February, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[10]   To the extent that plaintiff is requesting that the default judgment against Gilliam include attorney's fees and costs, that request is **denied** inasmuch as plaintiff has not shown how such fees and costs may be confined to those solely related to collection costs for Loan No. 30791, as opposed to the other two loans on which Gilliam was not a signatory and has no liability.